The Honorable, the Judges of the United States Court of Appeals of the French Circuit. Please be seated. We're happy to hear argument in Number 131821, Scheider v. Deutsche Bank. Mr. Lucia. Ms. Lucia. Good morning. Good morning. May it please the Court, my name is Antonia Lucia and I represent the appellants. I believe that the main issue today is whether the appellants have standing to challenge noncompliance with the pooling and servicing agreement that governs the Remick Trust in question. The cases have differed and the opinions have come down, differing on, the difference has been on whether the actions that do not comply, with the trustee's actions that do not comply with the pooling and servicing agreement, whether those actions are void as opposed to voidable. I believe discussion has to start with the statutes that govern Remick Trusts. Remick Trusts are governed by federal statutes. There are three sections of the statute in particular that I would like to refer the Court to. The first is 26 U.S.C. section 860 G.A. 9. That statute says that the start-up day of a Remick is the day in which it is prepared to issue all of its regular and residual interests. Now the trust in question, I'm sorry, the pooling and servicing agreement, dates the trust as August 1, 2006. And it says the closing date of the trust is August 30, 2006, 30 days. The closing date is synonymous for purposes of the statute with the start-up date. So according to 860 G., the trust must be in a position by its closing date, 30 days from its dated, to issue all of its regular and residual interests. The only way that it can be in that position is to have control of those interests. And in fact, the PSA in question at section 2.01 sub A indicates that the depositor must have received and accepted control of the loan documents during that 30-day period. Ms. Lucia, do you dispute that under South Carolina law? Excuse me, Deutsche Bank is the holder of the note? I'm sorry? Do you dispute, I've got a cold and I'm having trouble speaking, but do you dispute that the bank in this case is the holder of the note? That is not germane to this issue, but no, Your Honor, on that issue. But the problem is we don't get to this issue of standing if we're able to affirm under South Carolina law. If the note follows the mortgage and we follow that trail, we don't need to worry about the standing issue under the PSA. So what I'm asking you is, do you concede that Deutsche Bank is the holder of the note in this case? Well, Your Honor, to begin with, Deutsche Bank presented three versions of the note in the lower court. One had no endorsements and another one had one endorsement and then there was finally an endorsement in blank. The PSA requires a certain chain of endorsements. Now, do I agree that under the UCC, Deutsche Bank was the holder of the note? Well, that would depend on, really, would the real note stand up to begin with? But even so, Your Honor, I think that what we're looking at is case law and case law that preceded the world before mirrors. Now we're in the world after mirrors and it's a totally different world we are dealing with factually. The UCC can be amended by agreement of the parties. That's what South Carolina law says. Our position is that the parties in this case have in fact amended the UCC. That they have separated the note and mortgage by their conduct and therefore that being the holder of the note no longer entitles a bank to foreclose. In the case of Mears v. Nebraska Department of Banking and Finances, Mears was against a wall in that case. They didn't want to be in the position of a mortgage banker for whatever reason. So they came out with a few pronouncements to the court. They said in a judicial proceeding, we hold only bare legal title. We have no right to repayment. We serve at the interest of the beneficial owner of the mortgage. They in fact admitted that they are nothing but a shadow recording system. They have no rights other than to record that mortgage and basically immobilize the lien while the note is transferred through several entities. Your Honor, how can they now assign a mortgage? How can they be a true assignment when in fact they hold no beneficial interest? Your Honor, I would really like to get back to the void versus voidable argument because I think I only have four minutes. Well that's fine. The only point I was making is we don't get there if we agree with your opponents that South Carolina law resolves this issue and that the holder of the note is Deutsche Bank. The note follows the mortgage and as a result they were entitled to do what they did. Your Honor, the argument is that by taking part in transactions under the pooling and servicing agreement, the bank has now changed South Carolina law. Let me ask you this. How do you deal with our opinion in Horvath, which if not on all fours is sufficiently close to this case to suggest that the result is that the bank was in fact the proper holder of the note and had all the power and authority to do what it did in this case? Here again, your Honor, Horvath cites 1930 and 1894 cases. Horvath did not have any in-depth, as far as I can see. Are you saying that old case law is not good case law? Your Honor, what I'm saying is that Horvath was not presented in the facts of this case and always the court can change a decision based on the facts if the facts impact the law. Here I'm saying that the facts impact the law because there was no, at least my reading of Horvath, there was no in-depth discussion of securitization and the voidable argument. That argument is critical because if we have standing to challenge compliance with the pooling and servicing agreement and if New York law controls that agreement, which it does, then the parties by their conduct have changed the law that's applicable and therefore, your Honor's question, does the mortgage follow the note under South Carolina law has no significance, which is why I think the voidable argument is crucial and I'd like to give him a chance to present that argument, your Honor. Here there are REMIC statutes that require that the note be transferred within 30 days and that the mortgages be transferred within three months of the closing date. That was not done, your Honor, and therefore the actions that we are speaking to, the non-compliant actions, they are illegal, they are contrary to statute. Now Judge Blatt's order and all of the orders talk about ratifying an ultra-virus act of a trustee. There has to be a distinction made between an ultra-virus act and an illegal act. An illegal act cannot be ratified, otherwise this court would be saying, or any court would be saying, that they are condoning an illegal act. The acts which did not comply with the pooling and servicing agreement were contrary to the REMIC statutes. If they're contrary to the REMIC statutes, they are illegal. They are not able to be ratified, therefore they are void as opposed to voidable. That's a critical issue, your Honor. The Bassman court didn't get there. The Bassman court didn't get there for a number of reasons. First of all, they were floundering. They asked counsel, it says it right in the decision, please, we looked at the New York cases, we can't distinguish the void, voidable, because some cases were void, some cases were voidable. They mention in passing the In re Dana case. In re Dana, there was a charitable remainder trust, under New York law, that was governed by internal revenue code. And the non-compliance was fair to comply with the internal revenue code, and the New York court said, under EPTL 7-2.4, that act is void, cannot be ratified. The other cases that were voidable were acts like the trustee making an unauthorized investment, or voting some stock in contravention of the agreement. There was a vast difference between a trustee going beyond the powers, going beyond his powers, as opposed to doing something illegal. Your Honor, I would prefer, when I am faced with two appellate courts like Glasky and Bassman, that reach totally opposed decisions, I would prefer to find some consistency in those decisions. And I believe in Bassman, what they were complaining about was the chain of endorsements. Those chain of endorsements are a creature of the PSA. The things that were complained about in violation of the REMIC statutes, those are void. Those two cases can stand together and be reconciled. And what the court is facing here are violations of the REMIC statutes. Those violations are void. They cannot be ratified. If they cannot be ratified, they are illegal and they are void. Therefore, we have standing, because certainly a debtor can complain about a void act. We have standing. We have standing to challenge noncompliance. And the ramifications of that, if the PSA controls, then New York law controls. And Your Honor's original question about the mortgage following the note under Horvath does not have validity within the context of this proceeding, Your Honor, because in this proceeding, the noncompliance takes us out of South Carolina law. It takes us into a realm of illegal noncompliance. Thank you. No? No, I see. I'd like to answer a question that Your Honor asked, and that is, if Horvath is wrong, and my answer to you would be no, but it's incomplete. It's incomplete because in Horvath, no one brought to the attention of the court the plain language of the mortgage, which is the same language as in here, and that is, that it was legal title that was vested in MERS. And if legal title is vested in MERS, then equitable title must be vested in someone else. And if equitable title has been vested in someone else, then, or something else, some other institution, then title has to have been split. That's never been considered. In the old cases, pre-MERS, equitable title and illegal title, in any of the cases I've found, have never been discussed where they've been split. And they were split on the face of it by the respondent. But South Carolina law hasn't split no concept, has it? No, sir, it hasn't. But the parties certainly have the right to do it if they wish to, and they've done it here. And in the Nebraska case, they indicated to it that they held, and I think I'm solid on the quote, we hold mere legal title. And if all they claim is mere legal title, then someone else must hold the rest of the title. And if somebody else holds the rest of the title, who is it? It's never been discussed. HOVATH is incomplete, is what I'm trying to say. And if HOVATH is incomplete, we've got to complete it. And that's where we're in the evolving of this law. And we need to look at that. Maybe I'm wrong, but at least your colleague, I thought her whole argument depended on us adopting New York law. Does your argument also depend on that? My argument, I'd like for you to adopt New York law, yes ma'am, but I think... That's not a question I asked you. Does your argument, does your ability to prevail in this case depend on whether we adopt New York law or not? Only in part. Only for the second part of the argument. What do you mean in part? Can you win if we do not adopt New York law? Yes ma'am. Okay, well what, under South Carolina law, helps you, gets you home here? Because in South Carolina, the law is that the mortgage follows the note. Right. Okay. But if the title to the mortgage has been split, then it can't. And if you look... In what case holds that? It doesn't. There is no case that holds that. But the point is, Your Honor... We should be creating law that we said... Well, I think the court has to create some law to address the fact that in no case has it been raised in South Carolina where the title has admittedly been split by the respondent. They've done that. They voluntarily did that. Well, the creation of a designee is not, a nominee is not new. No, it's not new, but it is where the title has been split. Well, okay. I hear what you're saying. And your answer to me is there is no South Carolina law. There is no South Carolina law. This is unique, but these people have... But it's not the first time that this kind of transaction has taken place in South Carolina. No ma'am, it's the first time it's been raised in a court in South Carolina. And that's, at some point, someone's going to have to be the first one to do it. But if you get to New York law, and again, it was not raised in the Bassman case where the void versus voidable in the sense of an ultraviolet versus an illegal act. That's new. That's something that has got to be addressed. And we would ask that you do that. Yes, this is fresh. This is new. But it has not been raised to the Supreme Court of South Carolina. And obviously we don't have a chance to because we were removed to federal court not an hour before you. Thank you. Good morning, Your Honors, and may it please the Court. It's clear from the Scheider's briefs and from the argument you've just heard that they're asking this court to make new law to address what they have called the evils of securitization. But this court in Horvath made clear that you don't have to break new ground to settle the issues in a case like this. All you have to do is apply the plain terms of the note in the mortgage, the terms the Scheiders agreed to in light of well-settled rules governing notes and mortgages. And to your questions or to their argument that Horvath is somehow incomplete, Horvath was a securitization case just like this one. Horvath involved MERS just like this case does. And Judge Motz, as you noted, there's nothing unusual about naming a nominee as the mortgagee. MERS has been around for 20 years now. It's involved in something like 60% of residential mortgages. This is the usual system. The overwhelming majority of courts that have considered the same arguments that the Scheiders are making here have rejected those arguments for exactly the reasons we've talked about in our brief. And there are two basic points to show why the district court got this ruling right. The first one, as Judge Diaz noted, is that the analysis under South Carolina law is straightforward. The holder of the note is a person entitled to enforce the note. A person is a holder if he's in possession of a note that's endorsed in blank. Right. There are not three different versions of the note. There's one note with a series of endorsements. What we provided to the district court were three copies of the note showing the addition of endorsements one after another. The progression? The progression. But the critical point is that the last endorsement is a blank endorsement. And since Deutsche Bank is in possession of a note bearing where the last endorsement is a blank endorsement, Deutsche Bank is the holder of the note. And so that means Deutsche Bank is entitled to enforce the note. And because the mortgage follows the note, Deutsche Bank also is entitled to enforce the mortgage. Has there been any more payment down on the mortgage since this litigation, since papers were filed in this case? No, Your Honor. I think I want to move to South Carolina. The straightforward analysis of South Carolina law is enough. The second part to the argument, though, is that the district court was right to say that the Shiders lacked standing to invoke the pooling and servicing agreement. And the reason for that is simple. They weren't parties to the PSA. They aren't third-party beneficiaries to the PSA. Under South Carolina law, under New York law, under really any state's law, you can't invoke a contract to which you weren't a party or a third-party beneficiary. That means they can't invoke the PSA to alter the applicable law. They can't invoke the PSA to invalidate a transfer of the note. They're strangers to that contract. And when they say that the parties have contracted out of South Carolina's UCC, they're forgetting that they are not parties to the PSA, which they say contracts out of the UCC. The PSA is a different contract executed by different parties three months after the note and the mortgage were executed. It has nothing to do with the enforcement of the note and the mortgage, which is what this case is about. I thought it was as simple as this under the CJS rule. The only way that they make it to you is if the assignment is absolutely invalid or ineffective. Now, as I understand the agreement, MERS had the right to assign the mortgage. And in that assignment, Deutsche Bank had the right to foreclosure. Is that not correct? Oh, it is. It is. I'd say the written assignment of the mortgage from MERS to Deutsche Bank is really not the issue because under South Carolina law, the mortgage follows the note. Deutsche Bank had that right when it took possession of the note. The written assignment is really just, I mean, for our purposes, housekeeping to make sure that all the documents are in the hands of the same party when it comes time to foreclose. But the mortgage had already passed to Deutsche Bank. The rule that you're talking about, the CJS rule, which gives rise to this void-voidable argument that the Shiders talk about, that's a, South Carolina has, they're correct, South Carolina has not issued an opinion that adopts that rule. There are cases saying that you can't challenge an assignment, for instance, for lack of consideration. But the First and the Fifth Circuits are the only circuits I'm aware of that have held that a borrower may challenge an assignment based on an argument that would render it void rather than voidable. Those same cases, however, Reinagel in the Fifth Circuit, Culhane in the First Circuit, have rejected standing when the claim was that the assignment violated a PSA. And the reason they did that is, first of all, Reinagel is the best example, the Fifth Circuit case, applying Texas law, and it says the borrower was not a party or third-party beneficiary to the PSA. That's one reason they can't make that argument. Even if they were third-party beneficiaries, a violation of the PSA, and that case involved exactly the same kind of violation we're talking here, a transfer after the closing date, that kind of violation would only render the transfer voidable rather than void, and so the court there held that the borrowers did not have standing to make that PSA argument. So there's just no way that the Shiders can get standing to make the argument they're making. And one other point I'd make on this is that even one step sort of at a more general level, this court's unpublished decision in Woolf simply says that a borrower lacks standing to challenge an assignment to which he wasn't a party. He has no contractual right to enforce, and since the assignment doesn't change any of the terms of the underlying debt, the borrower still has to make payments in the amount that's required by the note, on the schedule that's required by the note. The only thing that has changed is the identity of the party that ultimately gets the benefit of the payments. So nothing about the transfer to Deutsche Bank changes any of the Shiders' obligations on that debt, and that's one more reason to say that they don't have standing to make the argument they're making. But as I said before, I think it's enough to say they're not parties or third-party beneficiaries to the PSA, and that is the only claim they've made to invalidate the transfer. So I think to sum it up, Horvath and Woolf together resolve all the issues in this case, and the district court got that exactly right. Unless the court has any further questions, we'd ask the court to affirm Judge Blatt's rule. Thank you very much. The issue of whether the mortgage follows the note, obviously is assuming that there has been no assignment of the mortgage to a third party. I mean, if the mortgage is either assigned to the note holder or has not been assigned, then you can say the mortgage follows the note. But what we have here, Your Honor, is the mortgage being assigned by virtue of the PSA to a third party. They have, in fact, their scheme has taken the mortgage away from the note holder. They have now said this mortgage will stay here, named Mears as nominee, will be immobilized, and the mortgage will be transferred several times. So we have a separation. Let me ask you this. How does that offend your client? What harm does your client suffer from that? Your Honor...  Yes, Your Honor. The Cohen Court recognized that when a person is facing a foreclosure, that's an injury. And I would say that facing a foreclosure... Well, if you don't pay on the note, you are facing foreclosure no matter who holds it, right? That's correct. So I'm asking you for the special injury that attaches, because in your view, we look, because of this later transaction, we look at the separation of the note. So tell me what the damage is to your client. Your Honor, I would submit that my client, at the very least, has the right to challenge the party that is foreclosing and to ensure that that party has standing to foreclose. Why? If he owes the money, if your client owes the money, what harm is it no matter who holds the note? That's allowing the other party to get by with a sort of a free pass despite their conduct in saying, well, if he pays, it doesn't really matter who he pays. And I would... Well, I could understand your argument if you made some claim that there could be double recovery against your client. But I don't read that in your papers, and it doesn't seem to me that it's really a possibility under the documents that exist here. So if he owes the money, he owes the money. And then if he's paying to an improper person because of what has happened, those people duke it out. But your client isn't hurt. Your Honor, if every court were to take that position, then all of what has happened in the mortgage industry goes by the wayside. The facts that they have set up, that they have taken the benefits of a remit trust, that they have gotten favorable tax treatments, that they have gotten bankruptcy remoteness in the scheme, that they have taken all of these benefits and now can just hide behind the fact that there is no double recovery. Your Honor, they should be stopped from taking that position. They should be made to have to demonstrate that they followed the rules too and that they have standing to bring this action. Not just that they... Just because you think that there's some moral up there in the sky, not that they've hurt anybody by doing this. Your Honor, I don't think it's a moral. I think if any of us looks at what has happened in this country... Well, I'm asking you how your client, that's the only person you're representing here, how this person has been hurt by this transaction. This person has been... Well, I mean, there are other issues here about his attempt to get a loan modification and their failure to... But that's not part of this court. No, Your Honor. But what brings us here today is the fact that we believe that my client should have the opportunity to bring them to task, to say that they didn't follow their own rules and that they have no right to stand before this court and now invoke the court's jurisdiction when they themselves have not followed the rules and have taken all the advantages of the system. Well, your client brought suit, right? Excuse me, Your Honor? Your client brought suit here. My client brought suit because... So your client is the one that wants the court to act. It's not that they've done something that your client is resisting in court. They are going along and asking for payment on their note. Your client's refusing it, and then comes to court and says, I don't have to pay because you've violated these various rules between each other. I just am trying to understand the logic of what you're saying. And I'm not getting it. Well, Your Honor, they have brought a foreclosure... They did bring a foreclosure counterclaim. Right, but that's out of the suit now, too. That's out of the suit, but we anticipate that it will be brought in state court. And the problem is that this issue would be res judicata if we did not continue with the appeal. So we had no... You brought the case before there was any counterclaim. That's why they call it a counterclaim. You had your claims first. I understand, but it was anticipated, given what was going on. Yes, we did bring the suit first, Your Honor. And yes, we feel that we should have the ability to hold them to the fire, so to speak. To have them explain why they didn't follow their own rules, why they took all the benefits and didn't follow the rules, and now that they didn't follow the rules and they took part in actions which were void under the statute that cannot now be ratified, how they can say that we don't have standing to challenge those actions. As a follow-up to Judge Monson's question, at the end of the day, if your client admitted that she owes somebody, at the end of the day, your client's going to have to pay. Correct, Your Honor. He just wants to know that he's paying the right person. And I think the law should give, there's no double recovery. Where is the beef? I still don't understand it. I understand that you are out to have everybody cross their Ts and dot their Is the way you think that they should under the statute, even though you're not part of the contract that you say governs that. And I just don't really understand what your harm is. I still don't understand it. It's a question of dotting their Is and crossing their Ts because what they did was in contravention of a statute. It's not that what they did was... Yes, but as a private individual, we can't go around enforcing statutes right and left just because we think that they should be enforced. We leave that to the government, by and large. Or if we have an actual stake in the controversy, if we have been harmed in some fashion by the violation of the statute, then we have a cause of action sometimes. Sometimes we don't. Well, Your Honor, let me ask you this. If, in fact, this client... Well, I asked you questions and you didn't answer them. I'm sorry, Your Honor. I shouldn't have posed it that way. But let me state this. If what they did was in violation of a statute, and if, in fact, that is a void act which cannot now be ratified, and if the only option they have, then, if the only proper party that has standing here is the original lender, and if the original lender, for whatever reason, chooses or cannot come forward, then my client is being harmed because then the person that should be enforcing his no may choose not to or may not be able to come forward. So, therefore, there may be harm here. How does that hurt your client if they don't pay, if they don't enforce the no? Because if they do not have standing and he has a valid right to object to that standing, it is not, therefore, foreseeable that he would face another foreclosure by the proper party that has standing. All right. Thank you, Your Honor. Is everybody down there? Is everybody down there? Okay. We will come down and greet the lawyers and then go directly to the next case.
judges: Diana Gribbon Motz, Albert Diaz, Henry F. Floyd